FILED
01/25/2024
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 7, 2023 Session

## AUXIN, LLC ET AL. v. DW INTERESTS, LLC ET AL.

**Appeal from the Chancery Court for Putnam County**
**No. 2019-166          Jonathan L. Young, Chancellor**
_____

**No. M2022-01087-COA-R3-CV**
_____

This appeal concerns a claim for declaratory judgment and counterclaims for intentional misrepresentation and breach of contract arising from a series of agreements related to the development of a hotel and conference center in Cookeville, Tennessee. The developed property was to be owned by a limited liability company, and the plaintiffs sought a declaration that they had a right to buy the defendants' interest in that company pursuant to an option in the operating agreement, which was to become effective upon a determination that the hotel project could not be completed with two identified, adjoining pieces of property. For their part, the defendants sought awards of compensatory and punitive damages based on allegations that the plaintiffs misrepresented their ability and intent to assist with financing and development tasks and then failed to perform those tasks as required by the parties' development agreement. After the defendants filed their answer and counter-complaint, the plaintiffs moved for judgment on the pleadings based, in principal part, on the "undisputed" fact that the real estate purchase agreement for one of the two development properties had terminated. The plaintiffs also moved to dismiss the defendants' intentional misrepresentation counterclaim for failure to state the allegations of fraud with particularity. But after the motions were filed and before they were heard, the defendants filed an amended answer with leave of the court in which they denied that the real estate purchase agreement had been properly terminated and asserted more particularized facts in support of their misrepresentation counterclaim. Nonetheless, the trial court granted the plaintiffs' motions, declared that the real estate purchase agreement had been terminated, and dismissed the misrepresentation counterclaim. The plaintiffs then filed a motion to dismiss or for summary judgment on the remaining counterclaim for breach of contract, along with a motion for judicial notice of several public records. The trial court granted the motion under Rule 12.02 and, in the alternative, Rule 56. The defendants appeal. We vacate the trial court's ruling that the plaintiffs were entitled to judgment on the pleadings because the defendants denied that the real estate purchase agreement had been properly terminated. But we affirm the dismissal of the misrepresentation counterclaim because the defendants failed to allege facts to establish the elements of their claim. We also affirm the trial court's denial of the motion to continue

because the record shows that the defendants were dilatory in prosecuting their contract claim. But we disagree with the court's decision to take judicial notice of two newspaper articles, and we vacate the trial court's ruling that the plaintiffs were entitled to dismissal of the contract counterclaim under Rule 12.02 and Rule 56. Thus, the decision of the trial court is vacated in part and affirmed in part, and this matter is remanded for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated in Part; Affirmed in Part; and Remanded**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

William C. Scales, Jr., and Bryan K. Williams, Nashville, Tennessee, for the appellants, DW Interests, LLC, and David White.

Daniel H. Rader, IV, and André S. Greppin, Cookeville, Tennessee, for the appellees, Auxin, LLC, and Auxin-Wilson Project, LLC.

## OPINION

### FACTS AND PROCEDURAL HISTORY

*The Agreements*

In 2016, DW Interests, LLC ("DWI"), entered into three agreements, the purpose of which was to develop a hotel and conference center near the historic train depot in downtown Cookeville, Tennessee (the "Hotel Project").

In the first agreement ("the Real Estate Purchase Agreement"), DWI agreed to purchase a tract of land ("the Original Hotel Property") from Auxin-Wilson Project, LLC ("AWP"). In the second agreement ("the Development Agreement"), DWI agreed to hire AWP's parent company, Auxin, LLC ("Auxin"), to "provide overall coordination" of the Hotel Project, including "assistance with obtaining economic incentives." The Development Agreement enumerated 13 services that Auxin was to perform, including using its connections in the community to obtain tax increment financing ("TIF") as well as zoning and planning commission approvals from the City of Cookeville for the Hotel Project. Auxin was also to solicit banks for the purpose of obtaining new market tax credit financing that DWI needed to develop the Hotel Project.

Four months later, DWI and Auxin executed a third agreement ("the Operating Agreement") to set forth the parties' rights and responsibilities as members of Cookeville Downtown Hotels, LLC ("CDH"). The Operating Agreement states that the Hotel Project was to be constructed on the Original Hotel Property and a separate but adjoining tract ("the Additional Hotel Property"). The properties were to be acquired by DWI and then

conveyed to CDH to create one contiguous tract of land for the development of the Hotel Project.

Furthermore, and as specified in the special option in § 14.8 of the Operating Agreement, in the event the Hotel Project could not be developed, CDH would "not acquire the Original Hotel Property and w[ould] own only the Additional Hotel Property." Auxin would then have the option pursuant to § 14.8 "to acquire all (but not less than all) of the interest of [DWI] in [CDH]." Upon exercising this option, Auxin and AWP would have the sole and unrestricted rights to develop the properties for their own use and purposes.

*Legal Proceedings*

Three years later, in September 2019, Auxin and AWP (collectively, "Plaintiffs") commenced this action against DWI and its principal, David White (collectively, "Defendants"). By that time, DWI had purchased and then assigned the Additional Hotel Property to CDH. In their complaint, Plaintiffs sought a declaration that the Real Estate Purchase Agreement had terminated and, as a result, that Auxin had the right to exercise its option under § 14.8 of the Operating Agreement to acquire all of Defendants' rights and interests in CDH. Plaintiffs claimed that they had properly exercised the option but that Defendants failed to honor Plaintiffs' rights.

Defendants timely filed an answer and countercomplaint. In their counter-complaint, Defendants asserted claims for breach of contract and intentional misrepresentation[1] based on allegations that Plaintiffs induced Defendants to enter the Agreements by "intentionally and willfully" withholding "material information about the Hotel Project" and by making "material misrepresentations and statements" regarding Plaintiffs' ability and willingness to procure financing. Defendants further alleged that Plaintiffs "failed to deliver on their contractual obligations" to obtain financing and "approvals for land and site development." In their answer, Defendants denied most of the material allegations, but they admitted that "[t]he Court should determine and declare that the Real Estate Purchase Agreement has **been properly terminated**." (Emphasis added).

---

[1] Defendants' counter-complaint did not denominate their counterclaims, but the parties and the trial court treated the allegations as asserting claims for breach of contract and "fraud and misrepresentation." As the Tennessee Supreme Court has noted, "'intentional misrepresentation,' 'fraudulent misrepresentation,' and 'fraud' are different names for the same cause of action." *Hodge v. Craig*, 382 S.W.3d 325, 342–43 (Tenn. 2012). "[I]n order to avoid confusion," the Court has suggested that "intentional misrepresentation . . . . should be used exclusively." *Id.* at 343. Accordingly, we will refer to the cause of action as a claim for intentional misrepresentation.

*Motions for Judgment on the Pleadings and to Dismiss*

Shortly thereafter, on November 8, 2019, Plaintiffs moved for judgment on the pleadings, contending that Defendants had admitted the existence of a genuine dispute concerning the Real Estate Purchase Agreement, the Development Agreement, and Operating Agreement (collectively, "the Agreements"), and that Defendants had further admitted "that the real estate purchase agreement had been properly terminated." In the same motion, Plaintiffs moved to dismiss Defendants' counterclaim for intentional misrepresentation on the ground that the counter-complaint failed to comply with the heightened pleading requirement in Tennessee Rule of Civil Procedure 9.02.

On the same day that Plaintiffs filed their motions, Defendants filed a motion to amend their answer and countercomplaint.[2] Defendants averred that amendment was necessary because, *inter alia*, their answer "contained a typographical or scrivener's error . . . , wherein the word 'admit' was mistakenly typed instead of the word 'denied.'" Accordingly, Defendants sought to correct the error and "to include additional particularized facts" relevant to their intentional misrepresentation claim.

On January 17, 2020, the trial court heard all three motions and took them under advisement. Two weeks later, on January 31, 2020, the court entered an order granting the motion to amend. Defendants filed their amended pleading on the same day.

Thereafter, and pursuant to an order entered on March 6, 2020, the trial court granted Plaintiffs' motion for judgment on the pleadings and awarded them "declaratory relief as sought, ruling specifically that Plaintiff[s] win[]." In pertinent part, the trial court declared as follows:

> The Court declares that the Real Estate Purchase Agreement has been terminated, and that Cookeville Downtown Hotels, LLC is unable to develop the property for the hotel project as contemplated by the Agreement as described, that Auxin, LLC has exercised the Special Option in Section 14.8 of the Operating Agreement and that Auxin, LLC is entitled to acquire all interest of DW Interest[s], LLC in Cookeville Downtown Hotels, LLC, in accordance with Section 14.8 of the Operating Agreement, at the net equity of zero as contemplated specifically by the written agreement.

---

[2] Although Defendants filed an amended answer in which they denied several material allegations in the complaint and added specific allegations of fraud, Plaintiffs did not file an amended motion for judgment on the pleadings. Thus, Plaintiffs maintained the assertion that Defendants had "admitted that the real estate purchase agreement ha[d] been properly terminated" when, in fact, Defendants denied the averment in their amended answer.

The trial court also found that Defendants' counter-complaint contained "only conclusory statements that [were] insufficient to make out an allegation of fraud" and dismissed the intentional misrepresentation counterclaim, leaving only the breach of contract claim.

Defendants subsequently filed a motion to alter or amend the judgment, which the trial court denied in August 2020, and a motion for permission to file an interlocutory appeal, which the trial court denied in October 2020.

*Motion to Dismiss or for Summary Judgment*

The only remaining matter was Defendants' breach of contract counterclaim based on Auxin's alleged failure to perform its obligations under the agreement, including its obligations to obtain financing and "approvals for land and site development." The case, however, lay dormant for eighteen months, until March 2022, when Plaintiffs filed a motion to dismiss under Tennessee Rule of Civil Procedure 12.02(6) or for summary judgment under Rule 56, supported by a statement of undisputed facts and a memorandum of law. Plaintiffs contemporaneously filed a motion to take judicial notice under Tennessee Rule of Evidence 201 to provide support for their motion under Rule 12.02.

In their motion for judicial notice, Plaintiffs asked the trial court to take notice of five public records and two newspaper articles to conclusively establish that Auxin had fulfilled its obligations under the Development Agreement. In the event that the trial court denied their request, Plaintiffs submitted the same materials as attachments in support of their motion for summary judgment. Thus, regardless of which rule applied, Plaintiffs were relying on nearly the same set of facts to establish that they performed their obligations under the contract and were entitled to judgment as a matter of law.[3]

Plaintiffs docketed their motions for a hearing on April 8, 2022. But on March 31, 2022, Defendants responded with a Rule 56.07 motion to continue, which they asserted was necessary so that they could "complete . . . discovery." However, Defendants never filed a response in opposition to either the motion to dismiss or the motion for summary judgment, and they never filed a statement disputing any of the facts set forth in Plaintiffs' statement of undisputed facts.

At the April 8, 2022 hearing, the trial court denied Defendants' motion to continue, finding that Defendants "failed to sufficiently identify the issues on which additional discovery would be beneficial" and "articulated no reasonable explanation for why the case sat dormant" or "why [Defendants] failed to engage in any discovery or other efforts to pursue their counterclaim, on which they knew they had the burden of proof." The court

---

[3] As discussed further in this opinion, Plaintiffs asserted three more facts in support of their motion under Rule 56 than in support of their motion under Rule 12.02.

further noted that "nothing at all was done by [Defendants], at all, until the Motion to Dismiss or for Summary Judgment was filed." For these reasons, the court held that Defendants were "dilatory" and "not entitled to relief under Rule 56.07."

The court also granted Plaintiffs' motion for judicial notice of the public records and newspaper articles showing, *inter alia*, that Plaintiffs had fulfilled their obligations under the Development Agreement. The court also noted that Defendants "did not file any response in opposition to the motion to take judicial notice as contemplated by the rules [of civil procedure]."

Considering the public records, the allegations in the pleadings, and the plain language of the Agreements, the court concluded that Defendants' counter-complaint failed to state a claim for breach of contract and, thus, dismissal was appropriate under Rule 12:

> [T]he counterclaim for breach of contract fails to state a claim for which relief can be granted under Rule 12, and . . . there has been no breach of any of the three agreements, which are attached to the pleadings in this case. The Court further finds that the public records and materials which were proper for judicial notice can be considered without converting the Rule 12 motion to a Rule 56 motion, and the public records establish that there was no breach, and the Counter-Complaint should be dismissed.

In the alternative, the trial court held that summary judgment was appropriate under Rule 56:

> The Court makes an alternative finding with respect to the Rule 56 motion. No substantive response was filed concerning the Rule 56 motion. There was no response to the statement of material facts, no statement of additional facts which may be material, and no affidavits or other materials were submitted. The Court finds that the material facts established by [Plaintiffs] were undisputed, and that [Plaintiffs] fully complied with the terms of the contracts, including particularly the development agreement. The Court finds from the material submitted that the Auxin personnel did affirmatively take the steps required by the Development Agreement, that there was no breach of that agreement or any of the three agreements, and that the counterclaim should be dismissed for this reason separately.

This appeal followed.

ISSUES

Defendants raise several issues on appeal, which we restate here as follows:

(1) Whether the trial court erred in granting Plaintiffs' motion for judgment on the pleadings;

- 6 -

(2) Whether the trial court erred in granting Plaintiffs' motion to dismiss the intentional misrepresentation counterclaim;

(3) Whether the trial court erred in denying Defendants' motion to continue under Rule 56.07;

(4) Whether the trial court erred in granting Plaintiffs' motion to dismiss the breach of contract counterclaim under Rule 12 by improperly considering matters outside the pleadings;

(5) Whether the trial court erred in granting Plaintiffs' motion for summary judgment under Rule 56; and

(6) Whether the trial court's final order is sufficient.

Plaintiffs join these issues.[4]

## ANALYSIS

### I. LACK OF A FINAL JUDGMENT

We begin with Defendants' threshold contention that the trial court's "final order" does not dispose of all issues in this case, namely the distribution of the escrow funds associated with the Real Estate Purchase Agreement.[5]

Under Rule 3 of the Tennessee Rules of Appellate Procedure, "any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable." Tenn. R. App. P. 3. However, Rule 2 of the Tennessee Rules of Appellate Procedure allows this court, in its discretion, to suspend the requirement, providing: "For good cause, including the interest of expediting decision upon any matter, the . . . Court of Appeals . . . may suspend the requirements or provisions of any of these rules in a particular case on motion of a party or on its motion and may order proceedings in accordance with its discretion[.]" Considering the present posture of this case, we find good cause to waive the finality requirement pursuant to Rule 2. *See*

---

[4] Plaintiffs also raise the question of whether the economic loss doctrine bars Defendants' intentional misrepresentation claim; however, this issue is pretermitted based on our affirmance of the dismissal of these claims.

[5] After the trial court granted the motion to dismiss or for summary judgment, Plaintiffs asked for an additional finding that they were entitled to retain the $50,000 in earnest money being held in escrow. Defendants objected, and the court stated that they could "fight that on a different day."

*Hopwood v. Hopwood*, No. M-2016-01752-COA-R3-CV, 2017 WL 2964886, at *3 n.4 (Tenn. Ct. App. July 12, 2017).

Because we have vacated the trial court's decision in several respects, as discussed below, we also remand the issue concerning the distribution of the escrow funds to the trial court for further proceedings consistent with this opinion.

## II. MOTION FOR JUDGMENT ON THE PLEADINGS

Defendants contend that the trial court erred in granting Plaintiffs' motion for judgment on the pleadings because they denied the material allegations set forth in the complaint on which Plaintiffs rely and because Defendants asserted affirmative defenses that create disputes of material fact, rendering judgment on the pleadings inappropriate.

For their part, Plaintiffs argue that "[t]he intention of the parties is clear and unambiguous from the plain language of the operative agreements, and accordingly, the Trial Court was able to determine the rights and interests of the parties to this action from the pleadings alone as a pure question of law."

"When reviewing orders granting a Tenn. R. Civ. P. 12.03 motion, we use the same standard of review we use to review orders granting a Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim." *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (citing *Waller v. Bryan*, 16 S.W.3d 770, 773 (Tenn. Ct. App. 1999)). Thus, we review a trial court's decision de novo with no presumption of correctness. *Id.* (citing *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997)).

A motion for judgment on the pleadings "is filed pursuant to [Tennessee Rule of Civil Procedure 12.03] and is similar to a motion to dismiss for failure to state a claim except that it is made after an answer is filed rather than before." *Edwards v. Urosite Partners*, No. M2016-01161-COA-R3-CV, 2017 WL 1192109, at *3 (Tenn. Ct. App. Mar. 30, 2017) (citations omitted). As we explained in *Laundries, Inc. v. Coinmach Corp.*, No. M2011-01336-COA-R3-CV, 2012 WL 982968 (Tenn. Ct. App. Mar. 20, 2012), when the party moving for judgment on the pleadings is the plaintiff, "we treat as false the allegations of the complaint which have been denied, and treat as true all well-pleaded facts in [the defendant's] pleadings and all reasonable inferences arising therefrom." *Id.* at *8 (citing *McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991)). However, "[c]onclusions of law are not admitted nor should judgment on the pleadings be granted unless the moving party is clearly entitled to judgment." *City of Morristown v. Ball*, No. E2020-01567-COA-R3-CV, 2021 WL 4449237, at *4 (Tenn. Ct. App. Sept. 29, 2021) (citations omitted).

Thus, in the instant case, because Defendants are the nonmoving parties, we must treat as false all allegations denied by Defendants, and assume all factual allegations by Defendants as true. *See Laundries, Inc.*, 2012 WL 982968, at *8.

In their amended answer, Defendants expressly and unequivocally denied that the Real Estate Purchase Agreement had been properly terminated. Defendants also denied (or denied for lack of knowledge or information) other material allegations in the complaint relating to Plaintiffs' assertion that the agreement had terminated, such as the following:

30. As a result of the continued failure of Defendants, and each of them, to take appropriate steps to perform their obligations, including specifically the failure to close during the ten-day cure period provided under the Real Estate Purchase Agreement, the Real Estate Purchase Agreement has been terminated.[6]

31. As a result of the continued failure by Defendants, and each of them, to take appropriate steps to perform their obligations, the resulting termination of the Real Estate Purchase Agreement, and for other reason[s], the Hotel Project cannot be developed involving both the CDH Property and the Auxin-Wilson Property.[7]

.     .     .     .     .

36. Plaintiff Auxin, LLC is ready, willing, and able to close on the option provided under Section 14.8 of the Operating Agreement, including obtaining a release of Defendants DW Interests, LLC and David White individually from all liability for the Mortgage and any other contractual debt of the Company.[8]

.     .     .     .     .

---

[6] Defendants' answer to the averments in paragraph 30 read: "Defendants deny the allegations in paragraph 30."

[7] Defendants' answer to the averments in paragraph 31 reads: "Defendants deny the allegations in paragraph 31 as stated, except the allegation that 'the Hotel Project cannot be developed involving both the CDH Property and the Auxin-Wilson Project Property,['] which allegation Defendants are without knowledge or information sufficient to form a belief as to the truth of such allegation."

[8] Defendants' answer to the averments in paragraph 36 reads: "Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36 regarding Auxin's abilities, capabilities or desires. Defendants deny any remaining allegations in paragraph 36."

38. As a result of the inability to develop the Hotel Project, the Development Agreement is terminated.[9]

Having reviewed the pleadings, the motion for judgment on the pleadings, and the Agreements, it is readily apparent that the most significant fact, indeed the dispositive fact Plaintiffs sought to establish as undisputed, was that the Real Estate Purchase Agreement had terminated. In particular, Plaintiffs' motion for judgment on the pleadings was based on "the fact," as is asserted in that motion, that Defendants admitted in their answer that the Real Estate Purchase Agreement had been properly terminated. Plaintiffs asserted in pertinent part:

> [T]he pleadings have been closed, [and] the Defendants have admitted the existence of a genuine dispute concerning the [Agreements], which are incorporated into the pleadings. **The Defendants have further admitted that the real estate purchase agreement has been properly terminated**. The contracts were incorporated into the original Complaint, as well as the Defendants' Answer and Counter-Complaint, and into this Defendants' Answer, all pursuant to Tenn. R. Civ. 10.03, and these agreements constitute part of the pleadings for all purposes, including those purposes for a motion for judgment on the pleading, without converting this motion to a Rule 56 Motion.

(Emphasis added).

While it is true that Defendants admitted this fact in their initial answer to the complaint, they amended their answer with permission of the court before a written order was entered.[10] We also acknowledge that Plaintiffs have set forth a litany of facts that, if proven, may entitle them to the relief sought; however, based on Defendants' denials of the foregoing averments, as well as others, the complaint and amended answer fail to establish that Plaintiffs are "clearly entitled to judgment." *McClenahan*, 806 S.W.2d at 769.

Because we are unable to conclude that Plaintiffs are clearly entitled to judgment on the pleadings, we vacate the decision of the trial court to grant Plaintiffs' motion.

---

[9] Defendants' answer to the averments in paragraph 38 reads: "Defendants deny the allegations in paragraph 38."

[10] To be fair to Plaintiffs, we acknowledge that the averment was correct when the motion was filed, but it was no longer accurate when the issue was decided by the trial court.

### III. MOTION TO DISMISS DEFENDANTS' INTENTIONAL MISREPRESENTATION COUNTERCLAIM

Defendants argue that the trial court erred in dismissing their intentional misrepresentation counterclaim, having "applied Rule 9.02's standard through too narrow of a lens." We disagree because, regardless of Rule 9.02 requirements, Plaintiffs failed to allege facts that, if proven, would establish the necessary elements of their claim.

To state a claim for intentional misrepresentation, a complaint must allege facts to establish the following:

> (1) the defendant made a **representation of an existing or past fact**; (2) **the representation was false when made**; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented fact; and (6) plaintiff suffered damage as a result of the misrepresentation.

*PNC Multifamily Cap. Inst. Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 548 (Tenn. Ct. App. 2012) (emphasis added) (citing *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008)).

In the present case, Defendants alleged that Plaintiffs "knowingly made materially false and misleading promises and representations . . . that [Plaintiffs] **would**, pursuant to and under the terms of the Development Agreement," fulfill the specific terms of the Agreement, as listed in the counter-complaint. (Emphasis added). However, as specified by the first element, the misrepresentation must have been of **an existing or past fact**, not a representation of something that may occur in the future. *Id*. Moreover, pursuant to the second element, the statement must have also been **false when made**. *Id*.

The substance of the Defendants' fraud allegations stems from promises made by Plaintiffs throughout the Agreement about facts that "would" happen in the future. We recognize that a claim of fraud may be premised on a promise of future performance. *See Keith v. Murfreesboro Livestock Mkt., Inc.*, 780 S.W.2d 751, 754 (Tenn. Ct. App. 1989) (finding material evidence to support claim of fraud based on promises of future conduct). But to state a claim for promissory fraud, the claimant must allege that the promisor had no present intention of performing when the promise was made. *See id.* Defendants made no such allegation.

Accordingly, we affirm the dismissal of Defendants' intentional misrepresentation claim.

## IV. Motion to Dismiss or for Summary Judgment on Defendants' Breach of Contract Counterclaim

Defendants contend that the trial court erred by dismissing their breach of contract counterclaim pursuant to Plaintiffs' motion to dismiss or for summary judgment. But first, they argue that the court erred by denying their motion for a continuance and by granting Plaintiffs' motion to take judicial notice. We will discuss each in turn.

### A. Motion to Continue

Defendants contend that the trial court abused its discretion in denying their Rule 56.07 motion to continue the hearing on the motion to dismiss or for summary judgment.

This court reviews the denial of a motion to continue under an abuse of discretion standard. *See In re C.T.S.*, 156 S.W.3d 18, 22 (Tenn. Ct. App. 2004) (citing *Knight v. Knight*, 11 S.W.3d 898, 905 (Tenn. Ct. App. 1999)). "In order to show an abuse of discretion, the moving party must show some ***prejudice*** or ***surprise*** which arises from the trial court's failure to grant the continuance." *Comm'r of Dep't of Transp. v. Hall*, 635 S.W.2d 110, 111 (Tenn. 1982) (emphasis added). Decisions regarding continuances are fact-specific and, thus, should be viewed in the context of the circumstances existing when the motion is filed. *Nagarajan v. Terry*, 151 S.W.3d 166, 172 (Tenn. Ct. App. 2003). "Among the factors that courts consider are: (1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted." *Id.* (footnotes omitted).

Here, the trial court thoroughly detailed its reasoning for denying the motion to continue:

> The Court finds that [Defendants] have articulated no reasonable explanation for why the case sat dormant for over two and a half years,[11] why they failed to engage in any discovery or other efforts to pursue their counterclaim, on which they knew they had the burden of proof. The Court rejects [Defendants'] claim that COVID was a legitimate reason for delay. The Court might accept COVID as an excuse for a couple of months from March 2020, but certainly not this excessive length of time, in total over two and a half years since the case was filed, and almost that long since the amended counter-complaint was filed in January 2020. The Court finds that even during the height of COVID the Supreme Court counseled for parties to continue the litigation using remote technologies, and there was certainly no

---

[11] The original complaint was filed September 3, 2019. Plaintiffs filed their motion to dismiss or for summary judgment on March 7, 2022.

reason for [Defendants] not to use the tools of written discovery and even to take depositions by Zoom.

The Court finds that it is telling that nothing at all was done by [Defendants], at all, until the Motion to Dismiss or for Summary Judgment was filed. The Court further rejects the other excuses offered by [Defendants] concerning an alleged failure to submit an order reflecting the Court's ruling denying the [Defendants'] interlocutory appeal, or an email about the potential for mediation from January 2020. The Court finds that if [Defendants] had any concern about an order, the local rules provide that they can and should lodge their own, and further that they were free to petition the Court to compel mediation at any time.

The Court simply finds there is no reason that [Defendants] did not do what needed to be done on the claims for which they had the burden of proof.

The Court does find that [Defendants] were dilatory, and are not entitled to relief under Rule 56.07. The Court additionally finds that [Defendants] failed to sufficiently comply with Rule 56.07, and that they failed to sufficiently identify the issues on which additional discovery would be beneficial. The Court finds that the Declaration of David White is insufficient, in that it only contains blanket accusations as are set forth in the Counter-Complaint, and does not sufficiently identify what discovery would aid in those issues, how discovery would aid in those issues, and what kinds of facts in aid of those issues would be developed by additional discovery beyond the blanket accusations themselves. In addition, Mr. White's declaration says that he has personal knowledge of evidence, but he has not tendered any evidence or articulated any actual evidence. The Court finds that a declaration that says essentially the same thing as the Counter-Complaint says is not sufficient. For any of these reasons, the Court finds that the motion to continue should be denied.

Thus, the trial court considered the applicable factors alongside the facts of this case and then identified its reasons for determining that the cumulative effect of these factors weighed against Defendants' motion to continue. Because the decision on a motion continue "lies in the sound discretion of the court"—and that decision "will not be disturbed unless the record clearly shows abuse of discretion and prejudice to the party seeking a continuance," *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997)—we find that the trial court did not abuse its discretion in denying Defendants' motion to continue. Therefore, we affirm the trial court's decision to deny Defendants' motion to continue.

- 13 -

## B. Motion for Judicial Notice

Defendants contend that the trial court erred when it granted Plaintiffs' motion for judicial notice because the Tennessee Supreme Court has held that newspaper articles and "city and county resolutions and/or meeting minutes . . . are not subject to judicial notice."[12]

With regard to the resolutions and ordinances, Defendants quote a 1977 Tennessee Supreme Court opinion, *Metropolitan Government of Nashville & Davidson County v. Shacklett*, 554 S.W.2d 601 (Tenn. 1977), stating that "courts cannot and do not take judicial notice of municipal ordinances." However, the Tennessee Rules of Evidence—including Rules 201 and 202, which provide the parameters for taking judicial notice—were adopted in 1990 and supersede this precedent. *See Counts v. Bryan*, 182 S.W.3d 288, 292 (Tenn. Ct. App. 2005). Consequently, we find no merit to this argument.

Regarding the newspaper articles, Defendants cite a 2010 Tennessee Supreme Court opinion, *State v. Henretta*, 325 S.W.3d 112 (Tenn. 2010), wherein the Court declined to take judicial notice of statements in a news report, explaining that "Rule 201 of the Tennessee Rules of Evidence . . . does not allow a court to take judicial notice of hearsay statements contained in a newspaper article." *Id.* at 144. Rule 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c).

Here, the two newspaper articles presented are a November 18, 2016, article with the headline "Council approves funds for planning studies" and a September 17, 2017, article with the headline "Downtown conference center granted parking variance." As with most news articles, the truth being asserted here is that the events occurred as described, clearly categorizing these articles as hearsay.

Thus, we hold that the trial court erred in taking judicial notice of the two newspaper articles. And we cannot say that this error was harmless because the newspaper articles were the only materials that mentioned Auxin by name. Thus, the court could not take judicial notice of the fact that Auxin or any of its personnel assisted DWI with the TIF funds or the zoning matters. The Board of Zoning Appeals minutes stated that AWP and CDH applied for the zoning variance, not Auxin. Furthermore, even if the court surmised that AWP and CDH were acting on Auxin's behalf in the zoning matters, the trial court

---

[12] Defendants also make a conclusory allegation that "each document contained in items 3-9 constitutes inadmissible hearsay of which a trial court cannot take judicial notice." We decline to address this argument because Defendants did not fully develop it. *See Sneed v. Bd. of Pro. Resp. of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010) ("It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.").

erred in taking judicial notice of newspaper articles to determine that Auxin assisted with the approval or acquisition of the TIF funds.

## C. Motion to Dismiss or for Summary Judgment

Defendants contend that the trial court erred when it granted Plaintiffs' motion under Rule 12.02(6) and when it made an alternate finding that Plaintiffs were entitled to judgment under Rule 56. We will consider the court's decision under each rule separately.

### 1. Rule 12.02(6)

Defendants contend that the trial court erred in granting Plaintiffs' motion to dismiss the contract counterclaim because there was no basis for the trial court to conclude that Auxin satisfied its obligations under the Development Agreement.

Tennessee appellate courts "review a trial court's decision on a motion to dismiss de novo, without any presumption of correctness." *Ultsch v. HTI Mem'l Hosp. Corp.*, 674 S.W.3d 851, 860 (Tenn. 2023). In doing so, "[w]e accept the factual allegations in the complaint as true." *Id.* "A motion to dismiss should be granted 'only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" *Id.* (quoting *Willis v. Tenn. Dep't of Correction*, 113 S.W.3d 706, 710 (Tenn. 2003)).

Actions for breach of contract require claimants to allege and prove "the existence of a valid and enforceable contract, a deficiency in the performance amounting to a breach, and damages caused by the breach." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011). Defendants' counterclaim alleges that Auxin and DWI entered into a valid and enforceable contract, that Auxin failed to provide the agreed-upon services, and that DWI suffered damages as a result of the breach. But Plaintiffs assert, and the trial court found, that the judicially noticed public records contained sufficient facts to establish that Auxin performed its obligations under the Development Agreement. We respectfully disagree.

The Development Agreement, which was incorporated into the pleadings, provided that Auxin would provide the following services:

(a)     Assisting [DWI] with obtaining a 20 year TIF for $4,000,000 (the "TIF Funds") from the Cookeville Industrial Development Board;

(b)     Applying for New Market Tax Credits and other financial incentives, excluding the TIF Funds (the "Financial Incentives");

(c)     Assisting [DWI] with applying for financing for the construction of the Hotel;

- 15 -

(d)     Assisting [DWI] with design of the Hotel, including selection of architects and engineers consistent with Section 2.3;

(e)     Selection of sub-contractors for construction of the Hotel consistent with Section 2.3;

(f)     Assisting [DWI] with arranging for demolition of the existing structures on the Property;

(g)     Assisting [DWI] with applying for franchise approval with a hotel franchisor;

(h)     Coordinating with adjacent land owners for development of their properties in a manner compatible with the Hotel;

(i)     Assisting [DWI] with applying with the City of Cookeville for all planning commission and other regulatory approvals for the Hotel;

(j)     Forging and maintaining relationships with City, County, State, Chamber of Commerce and other officials;

(k)     Promoting the Hotel with the media and with potential users of the Hotel;

(l)     Assisting [DWI] with obtaining an operator for the Hotel after its completion; and

(m)     Providing any other matters of negotiation, representation, consultation or advice as may be reasonably required by [DWI].

Construing the public records and drawing all reasonable inferences in a light most favorable to Defendants, we conclude that the public records do not establish as a matter of law that Auxin fully performed under the Development Agreement. In fact, the records are entirely silent as to Auxin's role in the local legislative efforts; the Board of Zoning Appeals minutes for September 14, 2017, reflect that AWP and CDH applied for and obtained a parking variance, but this still does not explain what role Auxin—the contracting party—played in the rezoning process.

For this reason, we conclude that the dismissal of Defendants' counterclaim for breach of contract was not appropriate under Tennessee Rule of Civil Procedure 12.02(6). Because we have determined that dismissal under Rule 12.02(6) was error, we shall consider whether the trial court erred in granting Plaintiffs' motion under Tennessee Rule of Civil Procedure 56.

## 2. Rule 56

Defendants contend that the trial court erred by granting Plaintiffs' motion under Rule 56 because it "was not properly supported as required by Rule 56.03 of the Tennessee Rules of Civil Procedure." More specifically, Defendants argue that "paragraphs 2–5 and paragraph 7 of Robert Duncan's Declaration did not come from his personal knowledge."

This court reviews a trial court's decision on a motion for summary judgment de novo with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Accordingly, this court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *See id.* In so doing, we "must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor." *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

The facts that Plaintiffs relied on in support of their motion under Rule 56 were largely the same as the facts they had relied on in support of their motion under Rule 12.02(6). As we have already ruled, even assuming that those facts were conclusively established, they did not definitively defeat Defendants' breach of contract counterclaim. Further, the only additional facts that Plaintiffs asserted in support of their motion under Rule 56 were supported by the affidavit of Mr. Duncan, one of Auxin's members, and stated as follows:

7. Auxin, LLC and Auxin-Wilson Project, LLC approached and solicited numerous banks (well over 10) about lending money necessary to complete development, including in connection with new market tax credits. . . .

8. Community Trust Bank provided a letter of interest with respect to making such a loan and the use of new market tax credits. . . .

9. Auxin, LLC took steps to ensure the availability of new market tax credits in furtherance of the project through its subsidiary, Tennessee Rural Development Fund. . . .

Defendants contend that these facts were not fully supported by Mr. Duncan's affidavit because he did not have personal knowledge of these facts. However, the trial court found that "the material facts established by [Plaintiffs] were undisputed" because there was "no response to the statement of material facts, no statement of additional facts which may be material, and no affidavits or other materials were submitted." It is well established that "the material facts set forth in the statement of the moving party may be deemed admitted in the absence of a statement controverting them by the opposing party." *Holland v. City of Memphis*, 125 S.W.3d 425, 428 (Tenn. Ct. App. 2003) (citing Robert Banks, Jr. & June F. Entman, Tennessee Civil Procedure, § 9-4(i) (1999)). Accordingly, we find no error in this regard.

But even accepting all of Plaintiffs' proffered facts as true, those facts did not defeat Defendants' claim for breach of the Development Agreement because they do not explain what Auxin did to fulfill its obligations, nor do they address all of the commitments made by Auxin in the Development Agreement.

Tennessee Rule of Civil Procedure 56 provides that "the judgment sought shall be rendered forthwith **if** the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact **and** that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. (Emphasis added). Thus, Defendants' failure to file a response allowed the trial court to treat the allegations as undisputed, but it was still necessary for the court to determine whether Plaintiffs were "entitled to judgment as a matter of law" on Defendant's breach of contract counterclaim. More specifically, the issue was whether the undisputed facts established that Plaintiffs satisfied their obligations under the Development Agreement, thus negating an element of Defendants' breach of contract claim and entitling Plaintiffs to judgment as a matter of law.

Because we have determined that the undisputed facts did not entitle Plaintiffs to summary judgment on Defendants' counterclaim for breach of contract, we pretermit Defendants' assertion that the trial court's order failed to comply with the requirements in Tennessee Rule of Civil Procedure 56.04.

For the foregoing reasons, we vacate the trial court's decisions to dismiss Defendants' counterclaims for breach of contract pursuant to Tennessee Rule of Civil Procedure 12.02(6) and Rule 56.

### IN CONCLUSION

We affirm the dismissal of Defendants' intentional misrepresentation counterclaim and the denial of Defendants' motion for a continuance. Further, we vacate the decision to grant Plaintiffs' motion for judgment on the pleadings and vacate the decisions to grant Plaintiffs' motion for dismissal pursuant to Rule 12.02(6) or summary judgment pursuant to Rule 56. This matter is remanded to the trial court for further proceedings consistent

with this opinion. Costs of appeal are assessed equally against Plaintiffs and Defendants for which execution may be issued.

_____

FRANK G. CLEMENT JR., P.J., M.S.